## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BAYOU LIBERTY PROPERTY, LLC**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 14-1112**

**BEST BUY STORES, LP,**                            **SECTION "B"(4)**
**AND BEST BUY CO, INC.**

**ORDER AND REASONS**

**Nature of the Motions and Relief Sought**

There are multiple motions before the Court. The first is Defendants, Best Buy Stores, LP and Best Buy Co. Inc.'s <u>Motion for Partial Summary Judgment</u>. (Rec. Doc. No. 22). Plaintiff, Bayou Liberty Property, LLC filed a Motion to Continue Submission Date (Rec. Doc. No. 28), which the Court granted. (Rec. Doc. No. 29). Third Party Defendant, Levis Partners, LLC., filed a cross <u>Motion for Summary Judgment</u> (Rec. Doc. No. 30). Defendants (Third Party Plaintiffs) have filed an opposition to this motion. (Rec. Doc. No. 36).

Plaintiff filed a <u>Motion Pursuant to FRCP 56(d)</u> seeking to continue the submission date on the Motion for Partial Summary Judgment (Rec. Doc. No. 22) due to a lack of information to formulate a response. (Rec. Doc. No. 31). However, Plaintiff filed a substantive opposition to (Rec. Doc. No. 22). (Rec. Doc. No. 33). Defendants then filed an opposition to the Motion to Continue Pursuant to Rule 56(d). (Rec. Doc. No. 34). This motion

is also before the Court. The motions, all set for submission on November 12, 2014, are before the Court on the briefs without oral argument, subject to further orders of the Court.

Accordingly,

**IT IS ORDERED** that Best Buy's Motion for Partial Summary Judgment (Rec. Doc. No. 22) is **GRANTED** in part and **DENIED** in part; that Bayou Liberty's Motion Pursuant to FRCP 56(d) (Rec. Doc. No. 31) is **DENIED** in part and **DISMISSED AS MOOT**; and that Levis Partners' Motion for Summary Judgment (Rec. Doc. No. 30) be **GRANTED**.

## Procedural History and Facts of the Case

This breach of contract action arises out of a Ground Lease for real property located in Slidell, Louisiana, between Bayou Liberty Property, LLC ("Bayou Liberty") as "Landlord" and Best Buy Stores, LP, as "Tenant." The parties entered into a Commencement Date Agreement, agreeing that the Commencement Date would be November 15, 2001. The parties executed a First Amendment to Ground Lease on or about May 7, 2003. The parties executed a Memorandum of Lease, which was recorded in St. Tammany Parish, and provides restrictions on the Landlord's ability to lease or use the remainder of its parcel. The Ground

Lease, First Amendment, and Commencement Date Agreement are herein referred to as "Lease."

On or about March 21, 2001, Best Buy Co., Inc. ("Guarantor") entered into a Guaranty Agreement, guaranteeing Best Buy's payment and performance under the Lease Agreement. The Lease provided for a twenty year lease term, with the first Lease Year beginning on the Commencement Date.

The Lease provides, "Tenant shall have the right at any time to assign this Lease or sublet all or any part of the Lease Premises, provided Tenant and Guarantor shall remain liable for the full performance of all terms, covenants and conditions of this Lease, and further provided, that Tenant shall give prior written notice to Landlord, and any such assignee shall agree, in writing to be bound by all the terms and provisions hereof."[1] The Lease requires Tenant maintain commercial general liability insurance with a combined single limit of Five Million Dollars for each occurrence and fire and extended coverage insurance for the Building in an amount equal to the full replacement cost of the Building.[2]

Bayou Liberty claims that, on or about October 17, 2011, Best Buy assigned its right, title and interest in, to and under

---

[1] Rec. Doc. No. 22-5 at 23.
[2] Rec. Doc. No. 22-5 at 20.

the Lease, including its leasehold interest in the building and other improvements and base building fixtures, to Slidell Development Company, LLC. ("SDC")(hereinafter "SDC Agreement"). Bayou Liberty claims the assignment was made by Best Buy to SDC without any prior written notice to Bayou Liberty, as required under the Lease. Further, Bayou Liberty claims the assignment conveyed ownership interest in the Building and Improvements, in violation of the Lease.

On or about January 15, 2013, SDC assigned to Levis Partners, LLC ("Levis" or "Levis Partners") and Levis assumed all of SDC's rights, title and interest in, to and under the Assignment from Best Buy to SDC (hereinafter "Levis Agreement"). Bayou Liberty gave notice to Best Buy on February 25, 2014, March 13, 2014, March 14, 2014 and March 21, 2014 that Best Buy was in default of the Lease Agreement.

On May 15, 2014, Bayou Liberty filed suit against Best Buy Stores and Best Buy Co. Inc. (as guarantor) for declaratory judgment and breach of contract. Bayou Liberty seeks a declaration, pursuant to 28 U.S.C. § 2201, that Best Buy is in violation of the Lease for (1) failing in two instances to give Bayou Liberty prior written notice of the assignment of Lease; (2) failing to have prospective assignee execute a specific assumption of the entire lease; (3) failing to use reasonable

efforts to find a subtenant or assignee to continue to operate the Lease Premises; (4) Best Buy's purported "sale" of the building when Best Buy has no legal ownership interest in immovable property belonging to Bayou Liberty; and (5) Best Buy's failure to maintain insurance coverage, providing certificates of insurance to Landlord, notifying its insurer- with copy to Landlord- of its vacancy, and making certain that required coverages remain in full force and effect notwithstanding Tenant's vacating the premises. (Rec. Doc. No. 1).

Based on the foregoing allegations, Bayou Liberty also seeks damages for breach of the Lease. Bayou Liberty claims to have suffered damages as a result of the breach, including lost rental opportunities. Bayou Liberty seeks to recover damages and to enter the Leased Premises and take full and absolute possession thereof, and to accelerate the rent due under the remaining terms of the Lease Agreement, in the amount of $1,549,602.

Best Buy Stores, L.P. and Best Buy Co., Inc. ("Defendants") filed an answer denying breaching any obligations to Bayou Liberty, and asserting counterclaims for: (1) declaratory relief- that Bayou Liberty is in violation of the Lease for failing to provide a timely estoppel certificate to Best Buy;

(2) breach of contract based on the foregoing; and (3) deceptive trade practices for the same. (Rec. Doc. No. 3). Bayou Liberty filed an answer to the counterclaim. (Rec. Doc. No. 8).

*Third Party Complaint*

Best Buy filed a Third Party Complaint against Levis for declaratory judgment and breach of contract. Best Buy seeks the following declarations: (1) Best Buy is not in breach of the Agreement with SDC; (2) Levis is in breach of the Agreement to Assign with SDC; and (3) Levis must satisfy all of its obligations under the Agreement to Assign. Best Buy claims that as a result of Levis Partners' breach of the Agreement to Assign, Best Buy suffered damages, including an inability to satisfy certain conditions of the Lease. (Rec. Doc. No. 4). Levis Partners filed an answer denying the allegations and asserting affirmative defenses. (Rec. Doc. No. 17). Levis Partners filed a counterclaim seeking a declaration that Best Buy had breached its obligations and return of $1,654,000 paid by it into escrow under the SDC Agreement.

The Court now reviews contentions, alleged facts, and the law concerning Best Buy's Motion for Partial Summary Judgment; Levis Partners' Motion for Summary Judgment; and Bayou Liberty's Motion to Continue Pursuant to FRCP 56(d).

**Law and Analysis**

I.  Best Buy's Motion for Partial Summary Judgment

***Contentions of Movant Best Buy***

Best Buy contends the following: (1) under the terms of the Ground Lease notice was only required prior to assignment; (2) the agreement with SDC was an agreement to assign and not an actual assignment of the lease; (3) the later assignment to Levis Partners was consistent with the terms of the Lease Agreement; and (4) as there is no violation of the Lease Agreement with Bayou Liberty, the assignee, Levis Partners, cannot "walk away." Although Best Buy entered into an "Assignment and Assumption of Lease" with SDC on October 17, 2011, Best Buy contends that the assignment to SDC took place, under the terms of the agreement, on the Transfer Date, defined as the opening date of Best Buy's new location in Fremaux, on March 14, 2014. Best Buy contends that written notice of this upcoming assignment was given to Bayou Liberty on February 19, 2014.

Best Buy further contends that SDC assumed all rights and obligations under the Ground Lease; that Best Buy did not fail to use reasonable efforts to find a subtenant or assignee to operate the premises as Best Buy actually assigned the lease;

7

that Best Buy did not attempt to sell Bayou Liberty's property to SDC; that Best Buy has provided all insurance and notice required under the lease; and that any alleged breach was harmless, and Bayou Liberty did not suffer any damages.

**Contentions of Respondent Bayou Liberty**

Bayou Liberty contends that there are two assignments that are in violation of the Lease. Bayou Liberty claims that on October 17, 2011, "Best Buy assigned its right, title and interest in, to and under the Lease, including its leasehold interest in the Building and other improvements and base building fixtures to SDC." This assignment was completed without giving prior notice to Bayou Liberty. Bayou Liberty did not receive notice of this assignment until February 19, 2014.

A second assignment took place on January 15, 2013 from SDC to Levis Partners. Bayou Liberty did not receive prior notice of this assignment, and further: (1) the Levis Assignment does not contain a specific assumption by Levis of the entire Lease, as required under the terms of the Lease, and (2) the Levis Assignment does not require Levis to operate the Leased Premises. Bayou Liberty contends that contrary to Best Buy's claim that the Agreement with SDC was an "agreement to assign," SDC itself assigned "all of SDC's right, title, and interest in, to and under the Prior Assignment" to Levis on January 15, 2013,

8

two months before the "Transfer Date." To the extent that the terms of the agreement between Best Buy and SDC are ambiguous, summary judgment should be denied to ascertain the intent of the parties.

### Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 749 (5th Cir. 2002). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R. Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013).

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp.,* 477 U.S. at 322-23. In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Contogouris v. Westpac Resources*, 856 F.Supp.

2d 846, 850 (E.D. La. 2012)(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

### Whether the October 17, 2011 Agreement with SDC Constituted an Assignment of the Lease

Under Louisiana law, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ. Code Ann. art. 2045. "Where the words of a contract are clear, explicit, and lead to no absurd consequences, meaning and intent of parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence; under those circumstances, interpretation of the contract is a matter of law and summary judgment is appropriate." *See* La. Civ. Code Ann. art 2046; *Claitor v. Brooks*, 137 So.3d 638, 645 (La. App. 1 Cir. 12/27/13). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. Civ. Code Ann art. 2048. Generally, parol evidence is inadmissible to vary the terms of a written contract. La. Civ. Code Ann. art. 1848.

Bayou Liberty and Best Buy differ in their interpretation of how the words of the October 17, 2011 SDC Agreement express the true intent of Best Buy and SDC. Bayou Liberty contends that the parties to the contract, Best Buy and SDC, signed the agreement

10

with the intent to assign Best Buy's rights and obligations under the Lease Agreement. As evidence of this intent, Bayou Liberty points to the fact that SDC, in turn, assigned its rights under the SDC Agreement to Levis Partners, two months before the "Transfer Date." Bayou Liberty also points to the Levis Agreement between SDC and Levis Partners, which references a prior assignment from Best Buy to SDC.

The main dispute centers on whether there was a present sense assignment of the Lease in the SDC Agreement. The Court looks to the four corners of the SDC Agreement to ascertain whether or not the words are clear and explicit. (Rec. Doc. No. 22-5 at 81). Therein, the parties recite that "[A]ssignor desires to assign to Assignee, and Assignee desires to accept and assume, all of Assignor's rights and obligations under the (Ground) Lease, upon and subject to the terms and conditions of this Agreement."

Under the terms of the Agreement: "Assignor...shall assign, transfer and convey to Assignee all of Assignor's right, title and interest in, to and under the Lease...effective as of the Transfer Date." Further, the SDC Agreement provides that: "[t]he assignment and assumption of the Lease under this Agreement shall occur and be effective on the Commencement Date as defined under that certain Lease by and between Assignor and Assignee ("the Fremaux Lease")." Additionally, the SDC Agreement

contained conditions precedent to the Transfer Date, including the execution of a certificate in favor of Assignee, and regarding the requisite condition of the Lease Premises upon delivery.

The Agreement contains what is known as an Integration Clause that provides: "[t]his Agreement, including any recitals and any attached Exhibits, all of which are made a part of this Agreement, contains the entire agreement of the parties concerning this subject matter." Under the Agreement, "[n]o amendment shall be binding unless it is in writing and signed..." The Agreement contains a "No Assignment" provision whereby, "[n]either party could assign prior to the satisfaction of all conditions to the assignment and assumption of the Lease and transfer of possession of the Premises to Assignee without prior written consent of the other party." However, the Agreement did not prohibit Assignee from further assigning on or before the Transfer Date.

The foregoing overwhelmingly supports a finding that the SDC Agreement was an agreement to assign, and not an assignment of the Lease. "Assignor desires to assign," "Assignor...shall assign...," and "[t]he assignment...of the Lease under this Agreement shall occur," do not rise to a present assignment at execution. A conclusion to the contrary, which Bayou Liberty

encourages, would largely moot the inclusion of "conditions precedent."[3]

The Court notes that the SDC Agreement did not "prohibit Assignee from further Assigning this Agreement or the Lease on or before the Transfer Date," (Rec. Doc. No. 22-5 at 90) and that the Levis Agreement, between SDC and Levis Partners, was executed on January 15, 2013, two months before the Transfer Date. However, for purposes of this analysis, any subsequent agreement or assignment by SDC is irrelevant as it has no bearing on the terms of the SDC Agreement, which are sufficiently clear. Further, under the terms of the SDC Agreement, SDC was simply free to assign its rights under that agreement and to the Lease.

In sum, assignment under the SDC Agreement occurred on the Transfer Date, March 14, 2014 and not on the date of agreement's execution, as the agreement did not trigger a present or immediate assignment. Prior written notice of this assignment was given on February 19, 2014. On March 14, 2014, under the terms of the SDC Agreement, assignment of Best Buy's rights, title, and interest in, to and under the Lease, was made to SDC ("SDC Assignment"). Once that assignment occurred, the

---

[3] *Compare* SDC Agreement *with* Levis Agreement (Rec. Doc. No. 22-5 at 176)("SDC hereby assigns to Levis, and Levis hereby assumes from SDC, all of SDC's right, title and interests in, to and under the Prior Assignment).

assignment by SDC to Levis Partners became effective ("Levis Assignment").

**_Whether the SDC and Levis Assignments were in Accordance with the Terms and Conditions of the Lease_**

<u>Relevant Terms and Conditions of the Lease</u>

Under the terms of the Lease, Tenant, Best Buy remains liable for the full performance of all terms, covenants and conditions. Prior to an assignment, prior written notice had to be given to Bayou Liberty. (Rec. Doc. No. 22-5 at 23). Best Buy was prohibited from conveying its right of occupancy, use and enjoyment, and title to any Improvements without the specific assumption of the entire Lease by the third party. (Rec. Doc. No. 22-5 at 23).

Unrelated to Best Buy's right of assignment is Best Buy's duty to obtain and maintain insurance and provide evidence thereof annually, by January 31st of each year.[4] (Rec. Doc. No. 22-5 at 23 at Section 22). The insurance policy had to require thirty (30) days' notice prior to cancellation, termination or non-renewal. (Rec. Doc. No. 22-5 at 20). In addition, under Section 29 of the Lease, if Best Buy ceased operations in the Leased Premises, and the remaining parcel had been developed as

---

[4] General Liability Insurance: Tenant shall obtain and keep in force at Tenant's expenses for the term of this Lease commercial general liability insurance with a combined single limit of Five Million Dollars for each occurrence.
Fire and Extended Coverage Insurance: Tenant shall procure and maintain fire and extended coverage insurance in an amount not less than the full replacement value of the Lease Premises, insuring Landlord (and mortgage lender) and Tenant.

a Shopping Center, Best Buy was required to use reasonable efforts to find a subtenant or assignee to operate in the Leased Premises.

<u>The SDC Assignment</u>

Best Buy provided prior written notice of the March 14, 2014 SDC assignment. (Rec. Doc. No. 22-5 at 194). The SDC agreement provides that SDC "shall accept the assignment, and assume and agree to perform and observe all of the obligations, covenants, terms and conditions of Assignor, as tenant under the Lease...." (Rec. Doc. No. 22-5 at 81). It is undisputed that this agreement contained a specific assumption by the assignee, SDC, of the Lease obligations. (Rec. Doc. No. 33 at 7).

Under Section 14 of the SDC Agreement, "Purchase Price for Building and Improvements," SDC was to pay Best Buy $1,654,000.00, for initial placement into an escrow account. However, the Lease required Tenant to surrender possession of the Leased Premises, including the building, upon expiration or termination of the Lease. The foregoing provision's terms are ambiguous as to whether SDC and Best Buy intended for a sale of the building. <u>The Court concludes that it is a disputed issue of material fact whether there was a sale of the building under the SDC Agreement in contravention of the terms of the Lease.</u> *See Comeaux v. C.F. Bean Corp.,* 750 So.2d 291 (La. App. 4 Cir. 12/15/99).

In this case, there is an insurance issue both related and unrelated to the assignment. Best Buy claims to have provided Bayou Liberty with the requisite annual insurance certificates and to have provided the insurer with notification of vacancy. Best Buy's attachments do not settle the issue of whether insurance certificates were provided to Bayou Liberty by the January 31st deadline, and/or whether thirty (30) day notice of vacancy was given to the liability insurer, and/or whether a copy of this notification was sent to Bayou Liberty, all consistent with Section 22 of the Lease. (Rec. Doc. No. 22-5 at 198-205). Thus, there is a genuine issue of material fact as to whether Best Buy adhered to Section 22's insurance notification provisions in vacating the Leased Premises on the SDC Assignment.

There is also a related "use" issue, as the Leased Premises was subsequently developed. Best Buy claims to have complied with Section 29 of the Lease by actually finding an assignee; however, nothing in the SDC Agreement (or the Levis Agreement) provides that SDC would operate the Leased Premises. Thus, it is unclear whether Best Buy used reasonable efforts to find a subtenant or assignee to operate the Lease Premises. Therefore, there is a genuine issue of material fact for trial as to whether, in ceasing operations and vacating the Leased Premises,

Best Buy used "reasonable efforts" under Section 29 to find a subtenant or assignee to operate the Lease Premises.

### The Levis Assignment

Bayou Liberty claims that prior notice of the Levis assignment was not given by Best Buy. Best Buy appears to be operating under the understanding that only prior notice of the SDC assignment, the first assignment, was required under the Lease. However, under the terms of the Lease, Best Buy remains liable for the failure to provide prior notice of an assignment or any other breach of terms and conditions. It is undisputed that Bayou Liberty did not receive prior written notice of the Levis Assignment. As prior notice of the Levis assignment was required under the Lease, the Court cannot find that the assignment to Levis Partners was consistent with the terms of the Lease.

### Breach of Contract: Damages Requirement

Best Buy contends that Bayou Liberty's breach of contract claim fails as a matter of law, as Best Buy has continued to pay rent, and Bayou Liberty has not otherwise suffered any damages in the form of "lost rental opportunities." Best Buy disregards the fact that the Lease at issue is for a twenty (20) year term, with approximately five to six years remaining on the lease.

Bayou Liberty also claims to have suffered damages as a result of Best Buy's failure to use reasonable efforts to find an assignee to "operate" the Leased Premises as Best Buy was the anchor tenant, and this failure affects the overall business health of the shopping center. Best Buy further contends that Best Buy failed to vacate the Lease Premises in good condition, as required under the Lease. Bayou Liberty sufficiently pleads damages in its breach of contract claim. For the foregoing reasons, Best Buy's motion for partial summary judgment as to liability on the breach of contract claims is denied.

**_Best Buy's Counterclaims for Declaratory Relief, Breach of Contract and Unfair Trade Practices_**

### Declaratory Judgment & Breach of Contract

Best Buy seeks partial summary judgment on its claim for a declaration that Bayou Liberty is in violation of the Lease for failing to timely provide a estoppel certificate to Best Buy. The Lease provides that:

> "Landlord and Tenant agree within thirty (30) days after request therefor by the other to execute in recordable form and deliver a statement, in writing, certifying (a) that this Lease is in full force and effect...(e) that there are no uncured defaults by Landlord or Tenant, or stating those claimed by Tenant or by Landlord...."

(Rec. Doc. No. 22-5 at 29, Paragraph 31). Best Buy claims to have requested an estoppel certificate on February 6, 2014 and

again on March 14, 2014. Bayou Liberty refused to provide one. On March 21, 2014, Bayou Liberty provided an estoppel certificate. (Rec. Doc. No. 22-5 at 14). Best Buy contends that this delay interfered with Best Buy's business relationship with Levis Partners, and therefore also seeks partial summary judgment on its breach of contract claim. Bayou Liberty acknowledges the delay. (Rec. Doc. No. 33 at 12). Therefore, there is no genuine issue of material fact that Bayou Liberty failed to timely deliver a written certification under Section 51 of the Lease.

However, for the Court to enter declaratory judgment on the breach of contract claim under Louisiana law, Best Buy, in addition to establishing a breach of contractual obligation, must establish that the breach *resulted* in damages. *SnoWizard, Inc. v. Robinson*, 897 F.Supp. 2d 472, 478 (E.D. La. 2012). It is unclear whether Bayou Liberty's delay in furnishing a certificate to Levis Partners interfered with Best Buy's business relationship with Levis, or rather, whether Best Buy's inability to obtain a "clean" certificate from the Landlord dissuaded Levis Partners from completing the assignment.[5]

Levis Partners gave Best Buy notice of default on March 20, 2014, and again on April 2, 2014. (Rec. Doc. No. 30-6 at 6).

---

[5] Levis Partners also claims that Best Buy has breached the SDC Agreement in a number other ways, including, Best Buy's failure (or inability) to certify that notice of default was not received from the Landlord under Section 9 of the Lease Agreement, and Best Buy's failure to provide a bill of sale. (Rec. Doc. No. 30-4 at 2, Paragraph 7; Rec. Doc. No. 30-6 at 5).

However, according to Best Buy the estoppel certificate from
Bayou Liberty was finally obtained on March 21, 2014. (Rec. Doc.
No. 22-5 at 14; Exhibit 12). On March 26, 2014, Best Buy
informed Levis Partners that an estoppel certificate from the
Landlord had been provided and that the certificate contained
allegations of default. (Rec. Doc. No. 30-6 at 7). Based on the
foregoing timeline, under the terms of the SDC Agreement, Best
Buy had an opportunity to cure default before the second notice
of default was given, after accounting for Bayou Liberty's
delay. Thus, it is clear that a clean estoppel certificate was
critical to Levis Partners and the delay was likely
inconsequential. For these reasons, the Court declines to enter
partial summary judgment on Bayou Liberty's liability on the
breach of contract claim.

II.  Bayou Liberty's Motion to Continue Pursuant to FRCP 56(d)

    To the extent Bayou Liberty's motion seeks to continue the
submission date on the foregoing motion on the issue of whether
the October 17, 2011 SDC Agreement constituted an assignment of
the Lease, the Motion is denied as the Court has resolved the
issue related to contract interpretation as a matter of law.
*Preston Law Firm, LLC v. Mariner Health Care Management*, 622
F.3d 384, 392 n. 3 (5th Cir. 2010); *In Re El Paso Refinery, LP,*
171 F.3d 249, 257 (5th Cir. 1999). To the extent the motion

<u>seeks to continue consideration on remaining issues, the motion
is dismissed as moot</u>.

III.   Cross Motions for Summary Judgment by Best Buy and Levis
       Partners

Best Buy seeks summary judgment to establish that: (1) Best
Buy is not in breach of the SDC Agreement; (2) that Levis is in
breach of the SDC Agreement for its withdrawal; and (3) that
Levis must satisfy all of its obligations under the SDC
Agreement. Levis Partners moves for summary judgment: (1) to
have the claims asserted against it dismissed; (2) to establish
that its agreements with Best Buy are terminated; and (3) for
release of escrowed funds.

***Contentions of Best Buy***

Best Buy contends that Levis breached the SDC Agreement
through improper repudiation as Best Buy was still willing to
perform on the contract; and, that Best Buy itself has not
breached the agreement, and is therefore entitled to enforce it.

***Contentions of Levis Partners***

Levis Partners purchased SDC's rights, title and interests
under the SDC Agreement and contends that Best Buy itself has
breached the SDC Agreement by (1) failing to "execute and
deliver a certificate in favor of Levis as of the Transfer Date,

confirming that all statements, representations and warranties contained in Section 9 of the SDC assignment are true, correct and complete"[6]; and (2) failing to provide an estoppel certificate, and a bill of sale conveying to Levis Partners Best Buy's interest in the building and improvements.[7] Best Buy could not certify to Levis Partners that Best Buy was not on notice of a claimed default, as the estoppel certificate provided by the Landlord contained allegations of default. Best Buy's inability to cure default in thirty (30) days terminated the agreement and entitles Levis to a refund of escrowed funds.

Best Buy contends that the breaches alleged by the Landlord in the estoppel certificate were demonstrably false; that the alleged breaches were not material and did not impact Levis Partners' ability to take possession and make use of the Lease Premises; and, that Levis Partners refused to accept a bill of sale and keys to the property and refused to perform under the SDC Agreement and take possession of the property.

---

[6] Under Section 9 of the SDC Agreement, Best Buy represents, covenants and warrants: (a) a right to enter into the agreement; (b) good title and full ownership of improvements on the Premises free and clear of all liens and encumbrances; (c) that the Premise complies with all laws, ordinances, rules, etc.; (d) the absence of hazardous or toxic waste, etc.; (e) that Best Buy has not received notice of any suits, judgments or violations relating to the Premises; (f) that the Lease is in full effect; (g) that Best Bu currently occupies the Premises and has not transferred assigned, or sublet any portion…; and (h) that to the best of Best Buy's knowledge, all terms and conditions of the Lease to be performed by Landlord or Best Buy necessary to the enforceability of the Lease have been satisfied and neither Landlord nor Best Buy is in default…In addition, neither Landlord nor Best Buy has delivered any notice to the other concerning an existing or potential default under the terms of the Lease…. (Rec. Doc. No. 30-7 at 6).

[7] Levis Partners also claims Best Buy failed to provide the following: Best Buy's most recent site survey; a copy of any and all restrictive covenants or architectural guidelines affecting ownership and use; most recent title insurance policy; copies of all geotechnical and environmental reports; and, a subordination, non-disturbance and attornment agreement; and failing to delivery keys to the Premises and copies of preceding twelve months of utilities. (Rec. Doc. No. 30-7 at 6).

***Best Buy's Breach of the SDC Agreement***

The SDC Agreement Section 8 provides that "if Assignor defaults under any provision, covenant, representation or warranty in this Agreement, and fails to cure such default within thirty (30) days of Assignor's receipt of written notice of such default, Assignee shall be entitled all rights and remedies available at law or equity, including specific performance." (Rec. Doc. No. 30-7 at 4).

Section 10(f) of the SDC Agreement provides that on the Transfer Date (March 14, 2014), [Best Buy] shall deliver to [Levis Partners] (i) an estoppel certificate in accordance with Section 31 of the Lease. Section 31 of the Lease, to which Section 10(f) of the SDC Agreement refers, provides that the estoppel certificate should certify, in relevant part, that: "(e) that there are no uncured defaults by Landlord or Tenant, ***or stating those claimed by Tenant or stating those claimed by Tenant or by Landlord.***" (Rec. Doc. No. 22-5 at 29).

A "clean" estoppel certificate was not required under the foregoing provision. Therefore, Best Buy could have satisfied Section 10(f) by providing an estoppel certificate on the Transfer Date stating the defaults claimed by the Landlord. Best Buy claims to have provided an estoppel certificate on March 21, 2014, and this is not disputed by Levis.

Section 10 (e) provides that: "[o]n or before the Execution Date, assignor shall deliver to assignee" certain specified documents.[8] As the Execution Date of the SDC Agreement precedes the Levis Assignment, the Section 10(e) obligations could not have been fulfilled by Best Buy with regard to Levis.

Section 10(a) is a condition to transfer and a condition precedent "to the Transfer Date under this Agreement," and provides that: "[a]ssignor shall execute a certificate in favor of assignee, dated as of the Transfer Date, confirming that all statements, representations and warranties contained in Section 9 above are true, correct and complete as of the Transfer Date."[9] It is undisputed that Bayou Liberty's allegations of default continue to preclude Best Buy from making the required certification. (Rec. Doc. No 22-2 at 20). Therefore, under Section 8, Best Buy is in default of the Section 10(a) provision.

As Levis Partners' obligation to complete the assignment is subject to a condition precedent, there is no liability or obligation on the part of Levis and there can be no breach of contract by Levis, unless and until the condition precedent is performed or occurs. Cf. *Yerger v. Simmons*, 67 So. 3, *6 (La. 1914)(stating that 'a condition precedent' calls for some act or

---

[8] (i) A recent survey and site plan; (ii) a copy of any and all restrictive covenants; (iii) assignor's most recent title insurance policy; (iv) copies of any and all environmental reports; (v) copies of any and all geotechnical reports; and, (vi) copies of utility bills.

[9] *Supra* text accompanying note 4.

event before the contract shall take effect"); *Vector Elec. & Controls, Inc. v. JE Merit Constructors, Inc.,* No. 2005CA2244, 2006WL3208462, at *1 (La. App. 1 Cir. 11/8/06)(stating that "condition precedent is an obligation that must be performed before the right dependent on it will accrue"). Louisiana Civil Code article 1990 provides that: "[w]hen a term for the performance of an obligation is either fixed...the obligor is put in default by the mere arrival of that term." As the condition precedent was subject to a limited time, that is, as of the Transfer Date with an additional time for cure, and the condition has yet to be performed, the Court finds that Best Buy has defaulted, thereby entitling Levis Partners to seek remedy under Section 8 of the agreement.

Under Louisiana law, "where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract." *Schaumburg v. State Farm Mut. Auto Ins. Co.,* 421 Fed. Appx. 434, 438 (5th Cir. 2011)(*citing Andrew Development Corp. v. West Esplanade Corp.*, 347 So.2d 210, 212 (La. 1977)). The foregoing; however, applies in the anticipatory repudiation context. *Sporting Land, LLC v. CHC Energy, LLC,* No. 07-1692, 2007 WL 4124537, at *5 (W.D. La. Nov. 19, 2007*); In re Merrill Lynch Auction Rate Securities Litigation,* No. 09MD2030(LAP), 2010 WL 1924719 (S.D. N.Y. May 11, 2010)(*citing Andrew Dev.*

*Corp. v. Esplanade Corp.*, 347 So.2d at 213). In other words, anticipatory repudiation is not actionable, unless and until there is an actual refusal to perform by the obligor. In *Schaumburg*, for example, the court analyzed whether an announcement signified intent to repudiate a contractual obligation. 421 Fed. App'x. at 438.

This case is different: Best Buy has actually failed to perform an obligation required by the agreement. Whether Best Buy is still willing to perform is irrelevant as Best Buy is precluded, and continues to be precluded from performing. This is not a case where there is time remaining to perform as required. For these reasons, the Court grants the motion for summary judgment by Levis Partners.

### *Levis Partners' Entitlement to Escrow Funds*

Levis Partners is entitled all rights and remedies available at law or equity under Section 8 of the SDC Agreement. Louisiana Civil Code article 995 provides that "damages are measured by the loss sustained by the obligee and the profit of which he has been deprived." Levis Partners claims loss in the amount of escrowed funds paid under the SDC Agreement. The Court finds that Levis Partners, LLC is entitled to release of the funds paid into escrow by it.

**Conclusion**

Accordingly,

**IT IS ORDERED** that Best Buy's Motion for Partial Summary Judgment (Rec. Doc. No. 22) is **GRANTED** in part and **DENIED** in part; that Bayou Liberty's Motion Pursuant to FRCP 56(d) (Rec. Doc. No. 31) is **DENIED** in part and **DISMISSED AS MOOT**; and that Levis Partners' Motion for Summary Judgment (Rec. Doc. No. 30) is **GRANTED**.

New Orleans, Louisiana, this 2nd day of December, 2014.

_____
UNITED STATES DISTRICT JUDGE